IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| MICHAEL C. SMART,<br>　　　　Plaintiff, | §<br>§<br>§ | |
| v. | §<br>§ | EP-10-CV-253-PRM |
| | § | |
| UNITED STATES OF AMERICA;<br>JANET NAPOLITANO, Secretary of the<br>U.S. Department of Homeland Security<br>(official capacity); ALAN BERSIN,<br>Commissioner U.S. Customs and Border<br>Protection (official capacity); WILLIAM<br>MOLASKI, Port Director U.S. Custom<br>and Border Protection (official capacity);<br>NAME UNKNOWN, CBP Supervisor<br>U.S. Customs and Border Protection<br>(official and individual capacity); NAME<br>UNKNOWN, CBP Officer (Canine<br>Handler) U.S. Customs and Border<br>Protection  (official and individual<br>capacity); NAME UNKNOWN, CBP<br>Officer (Canine Handler Partner) U.S.<br>Customs and Border Protection (official<br>and individual capacity),<br>　　　　Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | |

<u>**MEMORANDUM OPINION AND ORDER OF DISMISSAL**</u>

On this day, the Court considered Defendants United States of America, et al.'s

(Defendants) "Motion to Dismiss" (Docket No. 24), filed September 30, 2010 and Plaintiff

Michael C. Smart's (Plaintiff) "Motion in Opposition to Defendant [sic] Motion to Dismiss"

(Docket No. 26), filed on October 12, 2010 in the above-captioned cause.  After due

consideration, the Court is of the opinion that Defendants' "Motion to Dismiss," should be

granted for the reasons that follow.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

On July 13, 2010, Plaintiff, proceeding *pro se* and *in forma pauperis*, filed his "Complaint." Docket No. 3. Therein, Plaintiff alleges claims under the Federal Tort Claims Act (FTCA), "42 U.S.C. §1983, the 4th, 5th, 8th, and 14th amendments to the U.S. Constitution, Bivens and Texas State Law." Compl. 2.

Plaintiff alleges that on November 12, 2009 he was improperly detained, in violation of numerous laws, by unidentified officers of the United States Customs and Border Protection (CBP) agency, a part of the Department of Homeland Security. According to Plaintiff, he was walking from the United States into the Republic of Mexico on the Paso Del Norte International Bridge in El Paso, Texas, when an unknown CBP officer (CBP Canine Handler) falsely accused Plaintiff of attempting to put a cigar out on a canine that the officer was using to make inspections. *Id.* at 2-3. A few moments later, as Plaintiff was attempting to continue on his way into Mexico, Plaintiff alleges that another unknown CBP officer (CBP Canine Handler's Partner) snatched a cigar out of his hand, threw the cigar on the ground, grabbed him, turned him around, and forced him up against a guardrail. *Id.* at 3. Plaintiff says that the CBP Canine Handler informed him that he was under arrest. *Id.* Plaintiff then says that he was placed in a "cell with [a] jacket and handcuff[s] left on." *Id.* While in his cell, Plaintiff claims that he was deprived of water, that he "begged" for water but was ignored, and that he "screamed for someone to bring [him] some water because [he] was burning up and felt like [he] was going to die in [his] cell." *Id.*

Plaintiff claims that he was approached in his cell by a supervising officer of the CBP (CBP Supervisor) and that the CBP Supervisor refused to give him water until after Plaintiff answered some questions. *Id.* Plaintiff then "told the CBP Supervisor that [he] wasn't going to

answer shit until [he] gets [sic] some water because [he] was burning up." *Id.* at 4.  When the

CBP Supervisor began to walk away from the cell, Plaintiff says that he agreed to answer

questions because he needed water.  *Id.*

According to Plaintiff, the questions asked were:  "(1) why do you always give CBP

personnel a hard time when [you] comes [sic] back into the country from Mexico[?]; and (2)

does [sic] you know that the CBP canine is a law enforcement officer[?]" *Id.*  Plaintiff states

that, following these questions, he was told he would be permitted to get water and that he would

be provided with the names of the arresting officers.  *Id.*  After ten minutes of waiting, Plaintiff

says that he "started banging, kick [sic], and threw [sic] himself into [the] cell door for

approximately 5 minutes until a CBP officer came in [the] cell and removed [his] handcuff[s]

and [he] was able to get water." *Id.*  Plaintiff also states that "soon" after he was released,  he

was provided with a CBP contact card but it did not have the name of the arresting officer on it.

*Id.*  After his release, Plaintiff says that he went into Mexico, but immediately returned to the

United States and demanded the names of the CBP officers involved in his detention, yet he was

only provided with a CBP contact card bearing the name of "Chief Douglas," an "African-

American." *Id.*

On November 15, 2010, Plaintiff filed his "Supplemental Complaint to Complaint"

[hereinafter Supplemental Complaint].[1]  Docket No. 34.  Therein, Plaintiff adds claims for a §

1983 conspiracy, and violations of 42 U.S.C. § 1985 and § 1986.  Plaintiff alleges, that on

---

[1] The Court construes the Complaint, Supplemental Complaint, and the "Criminal
Complaint" (Docket No. 35) (which the Court understands to have been an attachment to
Plaintiff's "Supplemental Complaint to Complaint," *see* Supplemental Compl. 6) once
combined, to assert the totality of claims in this cause.

October 25, 2010, subsequent to the events described in his Complaint, he was returning from Mexico into the United States on the Paso Del Norte Bridge, when he had an altercation with a CBP officer who is not named in the above-captioned cause. Supplemental Compl. 2-3. During the course of inspecting his identification card, Plaintiff requested that the CBP officer return his card, but the CBP officer continued his inspection and did not return it. *Id.* Plaintiff then yelled profanities at the CBP officer, which caused other CBP officers to respond by grabbing him and escorting him to the "Special Processing Management Area," where Plaintiff was handcuffed to a chair for what he estimated to be a total of four hours. *Id.* at 6.

During those hours, Plaintiff says that he refused to answer questions and ignored the CBP agents who approached him. *Id.* at 4-5. He contends that one CBP officer approached him, snatched papers out of his hand and said, "'this is for that canine [explicative omitted].'" *Id.* at 3. Eventually, after CBP officers did not respond to his questions, Plaintiff threw a group of chairs, including the one he was handcuffed to, into a cinder block pillar. *Id.* at 5. Then, Plaintiff claims that CBP officers twice used a taser on him. *Id.* Plaintiff says that he cut his hand during the ordeal and that in the period, before the "EMT" arrived, the CBP officers would not give him more than a tissue for the bleeding. *Id.* at 6. Plaintiff then says that he was given his Miranda warnings and charged with assaulting a federal officer before being transported to the El Paso County Jail. *Id.*

## II.   LEGAL STANDARD

### A.      The Rule 12(b)(1) Standard

Defendants' motion is premised, in part, upon Rule 12(b)(1). Mot. to Dismiss 5. A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges a federal

court's subject matter jurisdiction.  FED. R. CIV. P. 12(b)(1).  Federal courts are courts of limited

jurisdiction, and therefore have power to adjudicate claims only when jurisdiction is conferred by

statute or the Constitution.  *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994);

*Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998).  Recently, the Supreme

Court concluded that "[i]f the Legislature clearly states that a threshold limitation on a statute's

scope shall count as jurisdictional, then courts and litigants will be duly instructed . . . .  But

when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should

treat the restriction as non-jurisdictional in character."  *Arbaugh v. Y & H Corp.*, 546 U.S. 500,

517 (2006).  A case is properly dismissed for lack of subject matter jurisdiction when the court

lacks the statutory or constitutional power to adjudicate the case.  *Home Builders Ass'n of Miss.,*

*Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).

The Fifth Circuit has recognized two types of challenges to a court's subject-matter

jurisdiction under Rule 12(b)(1):  "facial attacks" and "factual attacks."  *Paterson v. Weinberger*,

644 F.2d 521, 523 (5th Cir. 1981) (citations omitted).  A "facial attack" occurs when a defendant

files a Rule 12(b)(1) motion unaccompanied by supporting evidence.  *Id.*  In that instance, "the

trial court is required merely to look to the sufficiency of the allegations in the complaint because

they are presumed to be true."  However, "if a defendant makes a 'factual attack' upon the

court's subject matter jurisdiction over the lawsuit, the defendant submits affidavits, testimony or

other evidentiary materials."  *Paterson* 644 F.2d at 523 (citations omitted).  In the event of a

factual attack, "a plaintiff is also required to submit facts through some evidentiary method and

has the burden of proving by a preponderance of the evidence that the trial court does have

subject matter jurisdiction."  *Id.*  "In short, no presumptive truthfulness attaches to plaintiff's

allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981) (citations and internal quotations omitted).

**B.      12(b)(6)**

Additionally, Defendants bring their motion to dismiss pursuant to Rule 12(b)(6).  Mot. to Dismiss 5.  Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of a complaint for "failure to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6). However, "the motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982) (quotation omitted).  To resolve a Rule 12(b)(6) motion, courts must determine "whether in the light most favorable to the plaintiff and with every doubt resolved on his behalf, the complaint states any valid claim for relief." *Gregson v. Zurich Am. Ins. Co.*, 322 F.3d 883, 885 (5th Cir. 2003) (internal quotation omitted).  "In considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings, including attachments thereto." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (but noting exceptions to this rule).

The complaint "'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In other words, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129

6

S.Ct. 1937, 1949 (2009) (quotations omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

### C.     *Pro Se* Status of Plaintiff

A court reviews *pro se* pleadings under a less stringent standard than those drafted by attorneys, and such pleadings are entitled to a liberal construction that includes all reasonable inferences which can be drawn from them. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (explaining the lower standard for *pro se* pleadings). At the same time, however, parties proceeding *pro se* are still required to provide sufficient facts in support of their claims. *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993). Even under the rule of liberal construction, "mere conclusory allegations on a critical issue are insufficient." *Id.* (citing *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989)).

"If dismissal of a *pro se* complaint is warranted, it should be without prejudice to allow [the plaintiff] to file an amended complaint." *Moawad v. Childs*, 673 F.2d 850, 851 (5th Cir. 1981). "At the same time, if the protections afforded public officials are not to ring hollow, plaintiffs cannot be allowed to continue to amend or supplement their pleadings until they stumble upon a formula that carries them over the threshold." *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986). Thus, a court may dismiss a *pro se* complaint with prejudice when the plaintiff "is fully apprised of [the] complaint's potential insufficiency and [has been] given [an] opportunity to correct any insufficiencies." *See Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998); *Jacquez*, 801 F.2d at 790-93 (dismissing with prejudice when the Court considered the totality of filings as constituting the plaintiff's "best case").

7

## III.   ANALYSIS

### A.   FTCA Claims

Plaintiff asserts claims under the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680

(2006) (FTCA).  In general terms, the FTCA opens the federal government to liability for acts

that would be a tort in the state where the acts occurred.  However, there are several preliminary

steps[2] that plaintiffs must take in order to present a claim to the district courts under the FTCA

and there are several exceptions reserved to the federal government which insulate it from

liability.

The Plaintiff has failed to make a claim against parties who are subject to liability under

the FTCA.  The FTCA provides that "[t]he United States shall be liable . . . in the same manner

and to the same extent as a private individual under like circumstance."  § 2674.  By its terms,

the FTCA is only a grant of jurisdiction over claims against the United States, and not against a

federal agency or employee. *Galvin v. Occupational Safety and Health Admin.*, 860 F.2d. 181,

---

[2] To bring claims to the district courts under the FTCA, plaintiffs must first present their claims to the appropriate agency, and second,  those claims must have been denied in writing, proof of which must be returned by certified or registered mail or if the claim is not answered within six months of being filed, plaintiffs may consider their claims denied and proceed to the district court.  § 2675(a).  A plaintiff's failure to exhaust remedies under the FTCA will deprive the courts of subject matter jurisdiction over those claims. *E.g., Price v. United States*, 81 F.3d 520, 521 (5th Cir. 1996).  Plaintiff asserts that he "filed a Federal Tort Claim with the Department of Homeland Security, U.S. Customs and Border Protection" on November 20, 2009.  Compl. 5.  However, Plaintiff does not assert that his claim was denied, nor does he attach any evidence that he even filed a claim.  Nevertheless, Defendants have failed to challenge Plaintiff's compliance with the FTCA requirements as to the claims in the Complaint.  Defendants do appear to challenge Plaintiff's compliance with the claims asserted in the Supplemental Complaint, however the Court does not perceive any FTCA claims in the Supplemental Complaint.  The Court is reluctant to proceed when its jurisdiction is not certain, but given the present posture of this matter, Plaintiff's assertion that he filed a complaint, the lack of a challenge by Defendants, and the fact that well over 90 days have elapsed since Plaintiff contends he filed his claim with CBP, the Court will proceed with an assessment on the merits.

183 (5th Cir. 1988) (concluding that "an FTCA claim against a federal agency or employee as opposed to the United States itself must be dismissed for want of jurisdiction"). Accordingly, the Court finds that it must dismiss the FTCA claims against all of the Defendants, other than the United States, because the Court lacks jurisdiction over these claims.

Additionally, the Court must dismiss the FTCA claims against the United States. The FTCA "contains numerous exceptions to the general waiver of immunity, among them the customs-duty exception found in § 2680(c)." *Jeanmarie v. United States*, 242 F.3d 600, 602 (5th Cir. 2001). The customs-duty exception maintains sovereign immunity, and therefore bars liability, for "[a]ny claim arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods, merchandise, or other property by any officer of customs or excise or any other law enforcement officer." § 2680(c).

The customs-duty exception has been interpreted to foreclose liability when it was alleged that, during the course of a detention incident to a vehicle inspection, CBP agents detained the driver of the vehicle who was attempting to leave the inspection area (apparently to use the restroom), "grabbed him[, ] 'jerked his arms behind his back and forced his abdomen into a counter,'" and "struck him about the face and neck." *Jeanmarie*, 242 F.3d. at 602. Similarly, the customs-duty exception was found to apply when a CBP officer used a "wrist/arm lock" to restrain a driver who ignored instructions from the officer during a vehicle inspection at the Paso Del Norte International Bridge. *Rivera v. United States*, 907 F. Supp. 1027, 1029-30 (W.D. Tex 1995), *aff'd*, 103 F.3d 125 (5th Cir. 1995) (per curiam) (unpublished).

It may be argued that the two cases cited above are distinguishable from the present situation because they involve mere detention, while Defendant alleges (and at this point in the

9

proceedings the Court takes as true) that he was actually arrested.  The court in *Jeanmarie* addressed this point and held:

> [N]otwithstanding the fact that intentional tort claims arising out of arrests are not barred by § 2680(c), and are in fact permitted by § 2680(h), such claims *are barred* by the customs-duty exception if the alleged torts arose from the inspection, seizure, or detention of goods by a Customs agent because such claims involve conduct covered by § 2680(c).

*Jeanmarie*, 242 F.3d. at 604 (citing *Gasho v. United States*, 39 F.3d 1420, 1433-34 (9th Cir. 199); *Capozzoli v. Tracey,* 663 F.2d 654, 658 (5th Cir. 1981)).  Accordingly, the Court must determine whether Plaintiff has alleged a tort which arose form the inspection, seizure, or detention of goods.

In order to ensure compliance with certain monetary reporting requirements, CBP officers are authorized to "stop and search, at the border and without a search warrant . . . any person entering or departing from the United States." 31 U.S.C. § 5317(b).  According to Plaintiff, he was at a designated inspection point when a CBP officer using a canine to conduct inspections, ordered his dog to approach and "snuff" Plaintiff.  Compl. 2.  By the terms of Plaintiff's own Complaint, it is evident that his alleged arrest and the tortious conduct which he asserts derived therefrom, were initiated during an inspection by a CBP officer using a canine at a designated point of entry.  The CBP officers were performing their official duties during the incident and all of the tortious conduct allegedly committed was sufficiently related to the CBP officers' inspection duties.  Accordingly, the customs-border exception under the FTCA, § 2680(c), applies and the Court must dismiss Plaintiff's FTCA claims against the United States for lack of jurisdiction.

**B.**      **§ 1983 Claims**

10

Plaintiff asserts claims under 42 U.S.C. § 1983 for false arrest, excessive use of force, and conspiracy. Compl. 5; Supplemental Compl. 7. "To state a claim under § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir. 1994) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)). Plaintiff fails to allege any facts consistent with the second prong. All of the named Defendants are federal employees and Plaintiff asserts that he was falsely arrested and physically harmed by United States CBP agents at a federally controlled border crossing. Compl. 1-4. Therefore, Plaintiff has failed to state a claim under 42 U.S.C. § 1983 and his § 1983 claims must be dismissed.

C.   *Bivens* Claims

Plaintiff states that he "has brought this suit pursuant to . . . Bivens," Compl. 2, but does not make any further reference to a *Bivens* action in his Complaint or Supplemental Complaint. Therefore, the Court is forced to make assumptions with regard to the precise contours of these claims. "Under *Bivens,* a victim who has suffered a constitutional violation by a federal actor can recover damages in federal court." *McGuire v. Turnbo*, 137 F.3d 321, 323 (5th Cir. 1998) (citing *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 395-97 (1971)). A *Bivens* claim can be brought for alleged violations of the Fourth,[3] Fifth,[4] Eighth,[5] and

---

[3] *Bivens*, 403 U.S. 388 (1971).

[4] *Davis v. Passman*, 442 U.S. 228 (1979).

[5] *Carlson v. Green*, 446 U.S. 14 (1980).

11

Fourteenth Amendments[6] (among others).  The Court observes that Plaintiff, in "Count 5,"

"Count 6," "Count 7," and "Count 9" of his Complaint, asserts violations of his Fourth, Fifth,

Eighth, and Fourteenth Amendments.  Compl. 6-7.  The Court concludes that Plaintiff intended

to bring these as separate claims under *Bivens*.

       "A *Bivens* action is analogous to an action under § 1983—the only difference being that

§ 1983 applies to constitutional violations by state, rather than federal, officials."  *Evans v. Ball*,

168 F.3d 856, 863 n.10 (5th Cir. 1999) (overruled on other grounds) (citing *Abate v. Southern*

*Pac. Transp. Co.*, 993 F.2d 107, 110 n.14 (5th Cir. 1993) ("*Bivens* is the federal counterpart of §

1983 [and] . . . extends the protections afforded by § 1983 to parties injured by federal actors not

liable under § 1983.").  Accordingly, in light of Plaintiff's *pro se* status, the Court will also

consider Plaintiff's "Count 1–False Arrest Under Section 1983" and "Count 2–Excuessvie [sic]

Force Under Section 1983" as subsets of Plaintiff's *Bivens* claims.

       As a preliminary matter, the Court recognizes that *Bivens* "provides a cause of action only

against government officers in their individual capacities."  *Affiliated Prof'l Home Health Care*

*Agency v. Shalala*, 164 F.3d 282, 286 (5th Cir. 1999).  Therefore, the Court dismisses all claims

against the United States, and all named and unnamed Defendants in their official capacities.

Only Plaintiff's claims against the three unnamed CBP officers in the individual capacities

remain.

       Notably, Defendants did not raise the defense of qualified immunity in their Motion to

Dismiss.  According to Local Rule CV-12, the time to raise such a defense has passed.  Loc. R.

---

       [6] *Jones v. City of Memphis*, 586 F.2d 622 (6th Cir. 1978); *see McGuire*, 137 F.3d at 323 (dismissing a *Bivens* claim made under the Fourteenth Amendment for lack of state action).

CV-12.  However, given the opacity of Plaintiff's Complaint and Supplemental Complaint, the Court does not consider the issue barred.

Qualified immunity analysis is a two-prong inquiry which asks whether the Plaintiff has alleged a violation of a constitutional right and whether the right allegedly violated is clearly established. *Wernecke v. Garcia*, 591 F.3d 386, 392 (5th Cir. 2009) (citing *Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009)).  District courts are free to consider either prong first, and failure of a court to answer either question in the affirmative is sufficient for a court to find that a defendant is protected by qualified immunity.  *Id.*  In each of the sections below, the Court finds that Plaintiff has failed allege a violation of a constitutional right.

### 1.     Fourth Amendment–Excessive Force

The Court assumes that Plaintiff's "Excuessvie [sic] Force" claim invokes Fourth Amendment protections.  To state a claim for excessive force under the Fourth Amendment, plaintiffs must show that they were seized. *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004) (explaining the criteria for a claim in the context of a § 1983 action).  Next, plaintiffs must show:  "(1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable." *Id.* (citing *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000)).  "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." *Id.* at 396-97.

13

Without deciding whether Plaintiff has stated a claim as to the other elements, the Court is satisfied that Plaintiff has failed to adequately claim that the use of force was objectively unreasonable. Plaintiff alleges that an unnamed CBP officer used excessive force to "arrest" him when the officer pinned his arm behind his back, turned him around, and pushed him up against a guardrail causing a bruise to his hip following an incident in which Plaintiff claims that he was falsely accused of trying to burn one of the CBP inspection dogs. Compl. 3, 5. Plaintiff concludes that he was "treated physically" even though he "did not present a threat." *Id.* 5.

"To determine whether a seizure was objectively reasonable, and thus whether an injury is cognizable, [courts] ask 'whether the totality of the circumstances justified that particular sort of search or seizure.'" *Flores*, 381 F.3d at 398 (citing *Tennessee v. Garner*, 471 U.S. 1 (1985)). "'[T]he permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests.'" *Id.* at 398-99 (quoting *Delaware v. Prouse*, 440 U.S. 648, 654 (1979)). "To 'gaug[e] the objective reasonableness of the force used by a law enforcement officer, [courts] must balance the amount of force used against the need for force.'" *Id.* at 399 (citing *Ikerd v. Blair*, 101 F.3d 430, 434 (1996)). "Whether an injury is cognizable and whether the use of force is objectively reasonable are inextricably linked questions. '[T]he amount of injury necessary to satisfy our requirement of "some injury" and establish a constitutional violation is directly related to the amount of force that is constitutionally permissible under the circumstances.'" *Id.* (quoting *Ikerd*, 101 F.3d at 434). "The injury must be more than a de minimis injury and must be evaluated in the context in which the force was deployed." *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001).

Plaintiff alleges that, as he was crossing into Mexico, he was falsely accused of attempting to burn one of the CBP canines, that he responded by saying "'I didn't try to burn your dog,'" and that he kept walking away from the officers. Compl. 3. Then, a CBP officer "caught up" to him as he was walking away and repeated the accusation. Plaintiff then contends that he "step[ped] to the left and continue[d] walking." *Id.* 3. At this point, Plaintiff says that he was arrested.

On the one hand, Plaintiff alleges a relatively minor injury, in the form of a hip pointer, caused by what is described as a relatively routine action by the CBP officer. On the other hand, Plaintiff describes a situation in which the CBP officer believed, however mistakenly, that Plaintiff had just attempted to burn the officer's inspection animal. Accordingly, under the facts alleged in Plaintiff's Complaint, it appears from an objective standpoint that the degree of force used and the injury caused were minimal, while the need to use force–as that need was understood by the officer who mistakenly believed that Plaintiff had attempted to burn his dog–was relatively greater given what Plaintiff describes as the officer's perception and Plaintiff's actions at the time of the incident. Therefore, the Plaintiff does not state a claim for excessive force that is plausible.

### 2.    Fourth Amendment–False Arrest

Since Plaintiff alleges that he was arrested, and not merely subjected to a routine border search, the Court will view his false arrest allegations in light of the Fourth Amendment's probable cause criteria. Plaintiff states that the Defendants did not have "proper legal authority to arrest" him and continues, "Plaintiff walked up [the] bridge to the left so [as] not to interfere with the CBP canine. When [P]laintiff walked pass [sic][,] [P]laintiff did not bend down or do

15

anything." Compl. 5.  According to Plaintiff, he asked the arresting CBP Canine Handler "what

was the probable cause" for the arrest, and the Canine Handler responded, "'you tried to burn my

dog.'" Compl. 3.  In sum, Plaintiff alleges that he was arrested without probable cause,

apparently for attempting to burn one of the CBP inspection dogs.[7]

      "Under the Fourth Amendment, an arrest is reasonable if supported by probable cause."

*Martinez-Aguero v. Gonzalez*, 459 F.3d 618, 625 (5th Cir. 2006) (citing *Atwater v. City of Lago*

*Vista*, 195 F.3d 242, 244 (5th Cir. 1999) (en banc)).  Courts "define probable cause as

'reasonable ground for belief . . . supported by less than prima facie proof but more than mere

suspicion.'" *Id.* (quoting *United States v. One 1978 Chevrolet Impala*, 614 F.2d 983, 984 (5th

Cir. 1980)).  "When probable cause exists to believe that a suspect is committing an offense, the

government's interests in enforcing its laws outweigh the suspect's privacy interests, and an

arrest of the suspect is reasonable." *Atwater*, 195 F.3d at 244.

      Plaintiff fails to allege facts that are consistent with his conclusion that he was arrested

without probable cause.  Plaintiff makes it clear that he did have a cigar in his hand at the time of

the alleged incident with the dog. Compl. 3.  Plaintiff does nothing to contradict the premise that

the cigar was lit at the time.  Further, Plaintiff asserts that the dog approached him and was close

enough to "snuff" him.  *Id.*  Additionally, the arresting officer had first-hand knowledge of the

events since he was the one holding the dog's leash and there is nothing to indicate that the

officer had anything obstructing his vision.  In short, the facts alleged in the Complaint are

consistent with a scenario in which the officer could have perceived that Plaintiff attempted to

---

   [7] The Court addresses both "Count 1" and "Count 5" of Plaintiff's Complaint in the
following discussion.

burn his dog with a cigar.  Plaintiff's assertion that he was arrested without probable cause is
based entirely on his claim that he did not do what he was accused of, not that the officer did not
have probable cause to suspect him of the offense.  Accordingly, Plaintiff's claim of unlawful
arrest is a mere conclusory allegation and is not plausible on its face.

### 3.      Fifth Amendment

In "Count 6" of his Complaint, Plaintiff alleges that his Fifth Amendment rights were
violated because he was not given his "Miranda warning."  Compl. 6.  Even if this claim were
true, failure to give a *Miranda* warning cannot be the basis of Plaintiff's *Bivens* claim.  *See*
*Murray v. Earle*, 405 F.3d 278, 285, 285 & n.11 (5th Cir. 2005) ("The Fifth Amendment
privilege against self-incrimination is a fundamental trial right which can be violated only *at*
trial.") (citing *Chavez v. Martinez*, 538 U.S. 760, 772 (2003) (holding "failure to read *Miranda*
warnings . . . did not violate . . . constitutional rights and cannot be grounds for a § 1983 action")
(four justice plurality)); *see also Warren v. City of Lincoln, Nebraska*, 864 F.2d 1436, 1442 (8th
Cir. 1989); *Giuffre v. Bissell*, 31 F.3d 1241, 1256 (3rd Cir. 1994); *Bennett v. Passic*, 545 F.2d
1260, 1263 (10th Cir. 1976).  Plaintiff does not allege that his statements have been used against
him at trial and the Court finds that he cannot assert a *Bivens* claim based on the failure of the
CBP officers to administer *Miranda* warnings.

### 4.      Eighth Amendment

Plaintiff claims that his Eighth Amendment rights were violated because he was subject
to "cruel and unusual punishment" when the "CBP Supervisor" refused to provide him with
water until after he responded to questions.  Compl. 6.  The Eighth Amendment provides that
"[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual

punishments inflicted." U.S. Const. amend VIII.  To support his claim of cruel and unusual punishment, Plaintiff describes a situation in which he was handcuffed and placed in a cell for approximately fifteen minutes, during which time his requests for water were refused.  Compl. 3. The Court finds that such treatment does not remotely approach the standard for cruel and unusual punishment under the Eighth Amendment.  Moreover, the provisions of the Eighth Amendment do not afford protections to an individual until after that person has been convicted and sentenced. *Graham v. Connor*, 490 U.S. 386, 395 n.6 (1989) (citing *Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977)).  Plaintiff has not alleged that his detention at the Paso Del Norte International Bridge on November 12, 2009 was part of a conviction and sentence, and therefore has failed to state a claim under the Eighth Amendment.

### 5.    Fourteenth Amendment

The Fourteenth Amendment applies to actions taken by states, not the federal government. *See San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 543 n.21 (1987) ("The Fourteenth Amendment applies to actions by a State.  The claimed association in this case is between the [United States Olympic Committee] and the Federal Government.  Consequently, the Fourteenth Amendment does not apply."); *McGuire*, 137 F.3d at 323 (dismissing Fourteenth Amendment *Bivens* claim where claims were directed at federal employees, and no state action was implicated).  Because Plaintiff alleges claims against the federal government and federal agents, Plaintiff cannot bring a Fourteenth Amendment claim against Defendants.

### F.    § 1985 Claim

As a preliminary matter, the Court notes that Plaintiff's Supplemental Complaint is

18

particularly difficult to understand.  After some effort, the Court perceives two additional claims.[8]  First, Plaintiff asserts a claim under 42 U.S.C. § 1985.  Section 1985 has three enumerated subsections, however Plaintiff does not specify which section he believes is relevant to his claim, so the Court, given his *pro se* status, has attempted to determine which section applies.

The first subsection, is titled "Preventing Officer from Performing Duties."  § 1985(1). As the title implies, it protects officers, or would-be officers, of the United States.  *Id.*  Nothing in Plaintiff's Complaint or Supplemental Complaint suggests that this section applies to him.

The third section, prohibits various conspiratorial conduct and requires, "as an element of the cause of action" under this section, that "there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 101 (1971).[9]  Other than identifying himself as "a 42 year old African American male," Compl. 2, and describing a CBP officer as "African-American," Compl. 4, Plaintiff does not discuss race or class.  More importantly, nowhere in either the Complaint or

---

[8]  Plaintiff's Supplemental Complaint contains sections with the headings "Court (1) Violation of § 42 U.S.C. 1983; Conspiracy," "Court (2) Violation of § 42 U.S.C. 1985," and "Court (3) Violation of § 42 U.S.C. 1986."  Supplemental Compl. 7-9.  In his original Complaint, Plaintiff has sections with titles such as "Count 1 – False Arrest Under Section 1983" and "Count 2 – Excuessvie [sic] Force Under Section 1983."  Compl. 5.  In light of Plaintiff's *pro se* status, the Court interprets these sections as efforts to assert various claims.  Additionally, in the Supplemental Complaint, the Court construes "Court 1 Violation of § 42 U.S.C. 1983; Conspiracy" as a further effort to assert a claim under § 1985 because, for the reasons stated in section B of this Order, § 1983 claims are not appropriate given the facts of this case, and because the facts alleged in "Court 1" more closely approximate facts relevant to a § 1985 claim.

[9]  Additionally, § 1985(3) "contains the remedial provision granting a cause of action for damages to those harmed by any of the conspiracies prohibited in § 1985." *Haddle v. Garrison*, 525 U.S. 121, 124 n.2 (1998) (citing *Kush v. Rutledge*, 460 U.S. 719, 724-25 (1985)).

Supplemental Complaint does Plaintiff assert that he was discriminated against or otherwise mistreated on account of his race or membership in a protected class.  Accordingly, like § 1985(1), § 1985(3) is not applicable to Plaintiff's Complaint and Supplemental Complaint.

The Court feels that § 1985(2) is more to the point.  Section 1985(2) has two subparts. The first is relevant to the obstruction of justice in federal judicial proceedings, and does not require that conspirators act with racial or class-based discriminatory intent.  *Kush v. Rutledge*, 460 U.S. at 724-26.  The second subpart applies to conspiracies to obstruct justice in state courts and does require that the conspirators intend to deprive their victims of the equal protection of the laws through discriminatory behavior.  *Id*;  *See also Bryant v. Military Dept. of Miss.*, 597 F.3d 678, 687 (5th Cir. 2010).  Accordingly, for the same reasons that Plaintiff's Complaint and Supplemental Complaint do not state claims under  § 1985(3), the Court finds that the second subpart of § 1985(2) has no basis in Plaintiff's Complaint or Supplemental Complaint.  This leaves only subpart one of § 1985(2) as a potentially valid claim.

"The gist of the wrong at which § 1985(2) [part one] is directed is . . . intimidation or retaliation against witnesses in federal-court proceedings."  *Haddle*, 525 U.S. at 125.  To state a claim under § 1985(2), part one, a plaintiff must show:  (1) a conspiracy between two or more persons; (2) to deter a witness by force, intimidation, or threat from attending or testifying freely in a matter pending in federal court; which (3) causes injury to the plaintiff.  *Mitchell v. Johnson*, 2008 WL 3244283, at *2 (5th Cir. Aug. 8, 2008) (citing *Rutledge v.  Arizona Bd. of Regents*, 859 F.2d 732, 735 (9th Cir. 1988)); *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1124 (10th Cir. 2007); *Chahal v. Paine Webber, Inc.*, 725 F.2d 20, 23 (2nd Cir. 1984).  A plaintiff is not required to show monetary damages, but must show "that the conspiracy hampered the claimant's ability

to present an effective case in federal court." *Rutledge*, 859 F.2d at. 735.  Additionally, the Fifth

Circuit requires that a plaintiff allege an injury "because they attended or testified in federal

court."[10]  *Kimble v. D.J. McDuffy, Inc.*, 648 F.2d 340, 348 (5th Cir. 1981) (en banc).  Or, if

"parties and witnesses . . . have not yet testified in the proceeding . . . the conspirator must injure

the party or witness *in order to* deter him from attending or testifying in federal court." *Montoya*,

614 F.3d at 150 (emphasis in original).[11]

Plaintiff's Complaint and Supplemental Complaint fall afoul of the these basic

requirements in several ways.  First, Plaintiff fails to do more than offer conclusory assertions of

a conspiracy and fails to name or describe a Defendant who allegedly conspired or bears

responsibility for the alleged conspiracy.  "Plaintiffs who assert conspiracy claims under civil

rights statutes must plead the operative facts upon which their claim is based.  Bald allegations

that a conspiracy existed are insufficient." *Lynch v. Cannatella*, 810 F.2d 1368, 1369-70 (5th

---

[10]  Some doubt has been cast upon this requirement. *See Mitchell*, 2008 WL 3244283 at *2 (discussing possible ways in which *Kimble* and *Daubert v. Gulf Fed. Sav. Bank*, 820 F.2d 754 (5th Cir. 1987) have been overturned by *Kinney v. Weaver*, 367 F.3d 337 (5th Cir. 2004) (en banc) (citing *Haddle* 525 U.S. 121) and concluding "if the theory undergirding the result in [*Kimble* and *Daubert*] was physical presence, and physical presence is no longer required, then those cases are no longer good law"); *Montoya v. FedEx Ground Package System, Inc.*, 2009 WL 564308, at *4-5 (S.D.Tex. March 2, 2009) (discussing *Mitchell* and concluding "it is unclear whether the physical presence element is still a requirement under section 1985(2)").  Plaintiff does not contend that this action occurred as a result of his attendance or testimony in a federal proceeding, or that he has attended or testified in a federal court, and the Court notes that he has not attended or testified in the above-captioned cause.  If *Kimble* still requires an injury based upon physical presence in federal court, then Plaintiff fails to state a proper claim.

[11]  On appeal, the *Montoya* court declined to discuss the issues raised in *Mitchell*, 2008 WL 3244283 which were discussed at length by the trial court in *Montoya*, 2009 WL 564308 and declared that it was not "reaching any other issues presented by this appeal."  Accordingly, the Court does not perceive that *Kimble* and *Daubert* have been overturned, but that the Fifth Circuit in *Montoya*, 614 F.3d at 150 has articulated a standard relevant to alleged intimidation prior to a physical appearance in federal court.

Cir. 1987) (citations omitted).  Plaintiff claims that "[D]efendant [sic] knowingly formed a conspiracy to deprive [him] of his constitutional rights and in furtherance of that conspiracy . . . arrested and [illegally imprisoned him] with the specific intent to have criminal charges brought against [him] so [that he] would not be able to continue pursuing [his] civil lawsuit against [D]efendant [sic and . . . intended to discredit [him] during civil litigation [by bringing a false criminal charge]."   Supplemental Compl. 2.  Plaintiff names several individuals in the CBP and describes a few other unnamed individuals by their alleged roles, however Plaintiff never asserts that any Defendant conspired with any other officer and never specifies which Defendants were part of the conspiracy or bear responsibility for it.  For example, Plaintiff states "a conspiracy existed between [the] CBPO Chief, [Special Agent] Payne and [Special Agent] Faduoa" to falsely arrest and imprison him.  Supplemental Compl. 8.  However, none of the aforementioned individuals are defendants in this cause.

Additionally, Plaintiff states that the "CBPO Chief" and Special Agents Payne and Faduoa discussed Plaintiff in a private meeting, that an unnamed CBP officer made comments to him relating to the above-captioned cause, that he was not released after receiving his "violation notice," and that the CBPO Chief made "comments about [P]laintiff making threats." Supplemental Compl. 8.  While the existence of a conspiracy can be inferred from circumstantial evidence, the foregoing assertions, taken as true, are inadequate to properly allege a conspiracy. For one, a "private meeting" between the "CBPO Chief" and the two agents conducting the inspection of Plaintiff, in which Plaintiff was discussed does not do much to suggest a conspiracy, it does not even raise suspicious given the context.  One would expect that officers who were conducting an investigation might consult with a supervisor.  Plaintiff does not suggest

that an agreement was made during this meeting, or that the behavior of the officers changed thereafter.  It is not even clear that this meeting happened before Plaintiff was issued a citation, as would be required if Plaintiff's theory is that this was the meeting in which the conspiracy was formed.

In short, even construing the Complaint and Supplemental Complaint liberally, the Court cannot find sufficient factual allegations to satisfy the elements of a conspiracy, nor can the Court make out with any precision the contours of the particular conspiracy alleged.  Plaintiff fails to allege a conspiracy between two or more individuals and does not tie any of the Defendants to the conspiracy.  Accordingly, the Court finds dismissal for failure to state a claim appropriate.

Additionally the Court finds dismissal appropriate because the Court cannot find anything that resembles an assertion that there was ever a meeting of the minds or agreement of any sort among the conspirators in the Supplemental Complaint.  *See Green v. State Bar of Tex.*, 27 F.3d 1083, 1089 (5th Cir. 1994) (upholding dismissal of a § 1985(3) claim because of failure to "allege facts that suggest an agreement among the parties").  At best, Plaintiff alleges that there was an object of a conspiracy and an overt act–that he would be arrested to prevent his physical presence in court proceedings or that he would be charged with criminal conduct to discredit him and that he was actually arrested and charged–but this alone is not sufficient to support the conspiracy prong under § 1985(2).

Second, Plaintiff's fails to adequately claim "force, intimidation, or threat" of the type that is actionable under § 1985(2).  "Legal claims possessing a reasonable basis in law and fact simply do not constitute the 'force or intimidation' necessary to satisfy § 1985(2)."  *Timmerman*, 483 F.3d at 1124.  Plaintiff asserts that he was falsely arrested and imprisoned, Supplemental

Compl. 8, but the actual facts asserted in his Supplemental Complaint do not support this bald

conclusion.  Plaintiff asserts that he "was walking back into the United States via the Paso Del

Norte Bridge," a border crossing area where the CBP has authority to make inspections.  *See* 31

U.S.C. § 5317(b) (2006).  While a CBP officer was inspecting his document, Plaintiff became

frustrated by the pace and manner of the inspection and "reached out to grab [his identification]

card."  Supplemental Compl. 3.  When that attempt failed, Plaintiff "step[ped] forward and in a

loud screaming vocal [sic] said, 'Give me my [expletive omitted] card.'"  *Id.*  Plaintiff was then

taken to the Special Processing Management area where he was handcuffed to a chair.  *Id.*  After

a period of nearly three hours, during which Plaintiff repeatedly refused to respond to questions

from the CBP officers conducting the inspection, Plaintiff felt that he was being ignored and

"grab[bed] a group of chairs that [he] was handcuff[ed] to and [threw the] group of chairs into [a]

cinder block pillar.  Since [P]laintiff was handcuff[ed] to [a] chair[,] [he] hit the cinder block

pillar along with the chairs."  *Id.* at 5.  The facts that Plaintiff alleged in his Supplemental

Complaint are consistent with the facts alleged in the "Criminal Complaint," which Plaintiff says

resulted from this incident.  Supplemental Compl. Attach. 1 (Docket No. 28).  Therefore, the

Court does not find anything to support Plaintiff's contention that he was *falsely* arrested and the

Court finds that the criminal charges which Plaintiff contends are intended to deter him from

pursuing his civil claim do have a reasonable basis in law and fact[12] and therefore cannot form

the basis of a "force, intimidation, or threat" of the type prohibited by § 1985(2), part one.

      **G.**    **§ 1986 Claim**

---

[12] The Court's determination that the Criminal Complaint has a reasonable basis in law and fact is limited to the above-captioned proceeding and restricted to the issue of establishing force, intimidation, or threat under § 1985(2).

42 U.S.C. § 1986 "penalizes those with knowledge of and power to prevent § 1985 conspiracies who fail to do so." 42 U.S.C. § 1986. Therefore, if Plaintiff fails, as he has here, to make a valid claim under § 1985, the § 1986 claim must also be dismissed. *Bradt v. Smith*, 634 F.2d 796, 801 (5th Cir. 1981).

## IV.    WARNING TO PLAINTIFF

The Court is aware of many other cases filed by Plaintiff in the El Paso Division of the Western District of Texas and elsewhere, which have been dismissed for similar reasons.[13]  The Court notes that Plaintiff not only files claims with dubious legal and factual foundations, but that he does so through a shotgun approach to his pleadings.  That is, Plaintiff cites a large number of legal provisions and asserts various causes of action, without regard to their basis in law or fact, in the hope that the Court will parse out a valid claim.  Such tactics abuse the limited resources of the judiciary and are grossly inefficient.  The Court warns Plaintiff that if he continues with this practice and persists as an abusive litigant, the Court, under the power of 28 U.S.C. § 1651(a), may direct the Clerk of this Court to reject any further pleadings, papers, or documents from him without first obtaining leave of the Court.

## V.    CONCLUSION

Plaintiff has taken a shotgun approach to asserting claims before the Court and in each claim, either fails to state a claim upon which relief may be granted or attempts to bring a claim

---

[13] For a non-exhaustive list, see for example: *Smart v. United States*, EP-10-CV-132-PRM (W.D. Tex. Oct. 21, 2010) (dismissal based on res judicata); *Smart v. Shinseki*, EP-10-CV-116-PRM (W.D. Tex. Sept. 23, 2010) (dismissal for lack of jurisdiction and failure to state a claim); *Smart v. Holder*, EP-09-CV-101-KC (W.D. Tex. Aug. 12, 2009) (dismissal for lack of jurisdiction and failure to state a claim); *Smart v. Geren*, EP-07-CV-291-KC (W.D. Tex. Apr. 22, 2008) (granting summary judgment for the defendants).

which is jurisdictionally bared.

Accordingly, **IT IS ORDERED** that Defendants' "Motion to Dismiss" (Docket No. 24) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's § 1983 conspiracy claim, *Bivens* claims, § 1985 claim, and § 1986 claim are **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff's FTCA claims and remaining § 1983 claims are **DISMISSED WITH PREJUDICE.**

The Court **WARNS** Plaintiff Michael C. Smart against continued practice as an abusive litigant. If Plaintiff persists in this manner, he may be sanctioned and restrictions may be placed upon his ability to file with the Court.

**IT IS FURTHER ORDERED** that all pending motions, if any, are **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall **CLOSE** this case.

**SIGNED** this __30__ day of **November, 2010**.

_____
PHILIP R. MARTINEZ
UNITED STATES DISTRICT JUDGE